UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:24-cr-00164-JNW |
| Plaintiff, | ORDER |
| v. | |
| MATELITA JACKSON, | |
| Defendant. | |

## 1. INTRODUCTION

This matter comes before the Court on Defendant Matelita Jackson's Motion for Review of Conditions of Release, Dkt. No. 288, which Defendant Miracle Patu-Jackson has joined, Dkt. No. 290. They seek modification of their pretrial release conditions so they can communicate together without a third-party present.[1] Having considered the papers submitted in support of and opposition to the motion, as well as the relevant record, the Court DENIES the motion for the reasons below.

---

[1] Because they share the same surname, the Court refers to Matelita and Miracle by first name to avoid confusion. No disrespect is meant.

ORDER - 1

## 2. BACKGROUND

Matelita and Miracle are charged in a 20-defendant superseding indictment stemming from an alleged fentanyl trafficking organization run by the Jackson family. Dkt. No. 128. Matelita is charged with Conspiracy to Commit Money Laundering, while her daughter, Miracle, faces charges of Conspiracy to Distribute Controlled Substances—an offense carrying a mandatory minimum sentence of ten years. Dkt. No. 128.

On October 2, 2024, Magistrate Judge S. Kate Vaughan released both Matelita and Miracle on appearance bonds with conditions including: "You shall not have direct contact or indirect contact with any existing and/or future co-defendant(s) in this case, <u>except communications that are not case related that may be communicated through attorneys for co-defendants who are family members</u>." Dkt. Nos. 61, 175 (emphasis in original). Matelita and Miracle later moved to modify this condition to allow unfettered direct contact with each other. Dkt. No. 252; Dkt. No. 255.

After a hearing on December 18, 2024, Magistrate Judge Vaughan relaxed the condition to permit contact between Matelita and Miracle, as long as it occurs "only in the presence of Annie Patu" and that they "are prohibited from discussing this case." Dkt. No. 276; Dkt. No. 277. Matelita and Miracle now seek further modification to permit unsupervised communications without a third-party present.

ORDER - 2

# 3.  DISCUSSION

## 3.1  Legal standard.

The Bail Reform Act requires that pretrial release conditions be "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In determining the appropriate conditions, the Court must consider: (1) the nature and circumstances of the offense; (2) the weight of evidence against the defendants; (3) the history and characteristics of the defendants; and (4) the nature and seriousness of the danger posed by release. 18 U.S.C. § 3142(g). The Bail Reform Act specifically authorizes conditions that require defendants to "abide by specified restrictions on personal associations," "avoid all contact with potential witnesses," and "satisfy any other condition that is reasonably necessary to assure the safety of the community." 18 U.S.C. § 3142(c)(1)(B)(iv), (v), (xiv)

Under 18 U.S.C. § 3145(a)(2), this Court reviews Magistrate Judge Vaughan's release order de novo. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

## 3.2  The nature and circumstances of the offense support supervised contact.

The serious nature of the charged offenses strongly supports maintaining the supervised contact requirement between these co-defendant family members. Before the defendants' arrests, law enforcement seized around 825,900 fentanyl pills, 6.5 kilograms of fentanyl powder, 7.69 kilograms of cocaine, 3.3 kilograms of

ORDER - 3

methamphetamine, eight firearms, and $93,205 in cash from the alleged trafficking organization. Dkt. No. 294 at 10–11. Miracle conducted a drug transaction involving 100,000 fentanyl pills on behalf of the organization. *Id.* at 3. While Matelita is not directly charged with drug distribution, the Government alleges she provided essential financial support through money laundering operations for the trafficking organization. *Id.* at 3, 10-11. The presence of such large quantities of fentanyl—a drug fifty times stronger than heroin and a primary driver of the nation's overdose epidemic—underscores the serious danger posed by the alleged criminal enterprise. *Id.* at 3.

**3.3    Supervised contact is necessary to protect the community.**

The Government has shown that supervised contact between these co-conspirator defendants, Matelita and Miracle, is necessary to protect the community from the risk of continued criminal activity. Courts have consistently recognized the importance of restricting communications between co-defendants to prevent coordination of criminal activities while on pretrial release. *See United States v. Pickel*, 500 F.App'x 771, 772 (10th Cir. 2012) (upholding no-contact order between co-defendants to prevent "potential intimidation of, and collusion with, witnesses" that "would subvert the judicial process"); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1046–47 (9th Cir. 2002) (restricting pretrial detainee's telephone access to prevent communication with co-conspirators was reasonably related to the legitimate government interest of ensuring safety and preventing the detainee from helping co-conspirators elude arrest); *United States v. Valdez-Sanudo*, No. CR20-

ORDER - 4

0217-JCC, 2021 WL 1376954, at *2 n.2 (W.D. Wash. Apr. 12, 2021); *United States v. Sorensen*, No. 2:17-CR-00244-APG-NJK, 2017 WL 4799793, at *6 (D. Nev. Oct. 23, 2017), *aff'd*, No. 2:17-CR-244-APG-NJK, 2017 WL 6003060 (D. Nev. Dec. 4, 2017).

Matelita and Miracle's familial relationship, while important, does not override these legitimate governmental interests. As the Ninth Circuit has recognized, even fundamental familial rights "must be balanced against the interests of the state," and may be restricted when necessary. *United States v. Wolf Child*, 699 F.3d 1082, 1092 (9th Cir. 2012); *United States v. Hir*, 517 F.3d 1081, 1092–93 (9th Cir. 2008) (affirming pretrial detention order that included a ban on communication with defendant's brother who was alleged member of terrorist conspiracy).

Unlike the defendant in *Wolf Child*, who sought to live with his minor children with whom he had no co-defendant relationship, Matelita and Miracle are adult co-defendants in a serious criminal conspiracy. *Id.* at 1091-92.

### 3.4 The current condition appropriately balances competing interests.

The supervised contact condition represents a reasonable compromise between Matelita and Miracle's interest in maintaining their family relationship and the Government's interest in preventing criminal activity. Current conditions do not prohibit contact between Matelita and Miracle; they merely require that such contact be conducted in the presence of Annie Patu, a family member who has agreed to serve in this intermediary capacity. This condition is substantially less

ORDER - 5

restrictive than complete prohibition of contact, which would also be justified given the circumstances.

Magistrate Judge Vaughan's decision to require supervised communications came after carefully considering less restrictive alternatives. At the December 18 hearing, she noted she would likely have allowed Matelita and Miracle to live together had that arrangement been proposed at their initial appearances—a point that demonstrates her individualized assessment of the case. Dkt. No. 289-1 at 11:6-11. But given the defendants' separate living arrangements and the nature of the alleged conspiracy, she determined that supervised communications represented the best approach to balance the defendants' familial rights with community safety concerns. *Id*. at 23:1-6, 26:13-27:13. This Court agrees.

The Court has conducted a de novo review of the conditions and reached the same conclusion as Magistrate Judge Vaughan, regardless of whether she correctly characterized the defendants' position on supervised contact. *See Koenig*, 912 F.2d at 1193 (requiring independent determination on de novo review). In their motion, defendants argue that "the Court's basis for denying Defendants' request that no supervision be required was grounded in a mistaken belief that Defendants had somehow waived such arguments." Dkt. No. 288 at 9. The Court finds that supervised contact is the least restrictive means necessary to ensure community safety here, regardless of any alleged waiver.

As for Matelita and Miracle's allegations about the government's interview of Annie Patu, the Court notes that such procedural concerns about the interview do not affect the Court's substantive determination of the appropriate pretrial release

ORDER - 6

conditions. Defendants argue that "the Government appears to have leveraged the difficulty of onerous pretrial release conditions to induce cooperation in the interview of a family member that should have been reserved for pretrial services[.]" Dkt. No. 296 at 4. But the information obtained during that interview is not essential to the Court's determination that supervised contact is necessary given the nature of the alleged conspiracy and the defendants' roles within it.

### 3.5 Defendants' arguments are unpersuasive.

Matelita and Miracle's main argument—that the supervised contact requirement unduly infringes on their First Amendment right to familial association—is unpersuasive. First, as co-conspirators in a serious criminal case, they have no absolute right to unfettered communication while on pretrial release. *See United States v. Salerno*, 481 U.S. 739, 748 (1987) (recognizing that "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest"). Second, the current condition allows for substantial familial contact while imposing minimal restrictions reasonably tailored to prevent criminal collusion.

The cases cited by Matelita and Miracle do not support their position. Most notably, they rely on *United States v. Wolf Child,* 699 F.3d 1082 (9th Cir. 2012), but that case involved restrictions on a defendant's contact with his minor children and other minors generally—a much broader restriction that implicated direct parental rights over minor children. *Id.* at 1091–92. Unlike the parent-child relationship in *Wolf Child*, which involved minor children who were not co-defendants, this case

ORDER - 7

involves an adult mother and daughter who are both charged as participants in the same criminal conspiracy. This factual distinction is significant in balancing the defendants' familial interests against community safety concerns.

While the defendants have lived together for most of Miracle's life, their current living arrangements are separate, and Miracle is an adult who has lived independently during her college years. *See* Dkt. No. 288 at 5–6. The temporary restriction on unsupervised communication is not as severe as permanently separating a parent from minor children or preventing a defendant from living with immediate family members entirely.

The Court acknowledges Matelita and Miracle's claim that the restriction creates practical hardships and emotional strain, particularly given their previous living arrangement and the expected duration of the case. Dkt. No. 288 at 6. But they fail to explain why they need unsupervised contact. At the hearing before Judge Vaughan, their counsel suggested that supervised communication might inhibit discussion of "sensitive topics." Dkt. No. 289-1 at 17:10-22. But this vague concern doesn't outweigh the legitimate interests in preventing two alleged co-conspirators from having unsupervised communications when they're charged with serious crimes carrying substantial penalties.

## 4. CONCLUSION

Accordingly, the Court finds that the current condition requiring supervised contact between Matelita and Miracle represents the least restrictive means of reasonably assuring community safety. Accordingly, the Court DENIES their motion. Dkt. No. 288.

Dated this 7th day of April, 2025.

Jamal N. Whitehead
United States District Judge